**BROWN KWON & LAM LLP**

Brown Kwon & Lam LLP
Attorneys at Law
521 Fifth Avenue, 17th Floor
New York, NY 10175
Tel.: (212)295-5828
Fax: (718) 795-1642
Email: info@bkllawyers.com

April 25, 2024

**Via ECF**
Hon. Lewis J. Liman, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      RE:   *Salma Bahaa Hussein, et al. v. The Headless Widow LLC, et al.*
             <u>Case No. 1:24-cv-4658(LJL)</u>

Dear Judge Liman:

This firm represents Plaintiffs Salma Bahaa Hussein, Brian Noone, Jordan Merritt, Joel Zavala and Santiago Aljure in the above-referenced matter. We write to respectfully request judicial approval of the parties' settlement agreement, attached hereto as **Exhibit 1** (the "Agreement"), pursuant to *Cheeks v. Freeport Pancake House*, 796 F. 3d 199 (2d Cir. 2015). The Agreement resolves the claims of all five Plaintiffs under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") for the total amount of $70,000.00. As part of this motion, Plaintiffs' counsel requests attorneys' fees of $23,333.33 (i.e., one-third of the total settlement amount). For the reasons outlined below, the Court should approve this settlement as a fair and reasonable compromise of Plaintiffs' claims against Defendants.

## BACKGROUND

On June 18, 2024, Plaintiffs filed a Class and Collective Complaint alleging that Defendants The Headless Widow LLC d/b/a The Headless Widow and Edin Canovic, (i) failed to pay Plaintiffs the lawful minimum wage, (ii) failed to pay overtime premiums, (iii) failed to pay all wages due to off-the-clock work, (iv) improperly retained Plaintiffs' tips, (v) improperly deducted from Plaintiffs' pay, (vi) failed to pay all due spread of hours premiums, and (vii) failed to provide proper wage notice and wage statements, in violation of the FLSA and/or NYLL. See, (ECF Dkt. No. 1).

This case was referred to the S.D.N.Y. mediation program on September 12, 2024. A mediation session was held on December 4, 2024, with the S.D.N.Y. ADR Program Director, Rachel Price, Esq. Despite the parties' best efforts, they were unable to reach a settlement during the mediation. However, following the December 4, 2024 session, counsel for the parties continued to engage in extensive negotiations, and by January 16, 2025, the parties had agreed to a settlement framework. After multiple back and forth discussions, the parties finalized and executed a formal settlement agreement on April 18, 2025. See **Exhibit 1**.

## **THE SETTLEMENT IS FAIR AND REASONABLE**

Pursuant to *Cheeks*, "stipulated dismissals settling FLSA claims with prejudice require the approval of the district court." *Cheeks*, 796 F.3d at 206; *see also Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). "Generally, there is a strong presumption in favor of finding a settlement fair, as the court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzcha v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013). "Because *Cheeks* itself did not define the contours of the approval analysis or protocols it envisioned, most district courts within our Circuit turn to the multi-factor test set out in *Wolinsky* to evaluate whether an FLSA wage and hour settlement is fair and reasonable." *Cabrera v. CBS Corp.*, No. 17 Civ. 6011, 2019 US Dist LEXIS 20963, at *13 (S.D.N.Y. Feb. 8, 2019) (internal quotation marks omitted).

Accordingly, in determining whether a proposed FLSA settlement is fair and reasonable, courts consider the following factors: (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. *See Wolinsky*, 900 F. Supp. 2d at 335. Based on these factors, the proposed settlement should be approved as fair and reasonable.

### A. Plaintiffs' Range of Possible Recovery

The first factor weighs in favor of approval. As part of this settlement each Plaintiff is receiving the following amounts: $4,000.00 to Plaintiff Salma Bahaa Hussein; $10,666.67 to Brian Noone; $2,000.00 to Jordan Merrit; $19,333.33 to Joel Zavala; and $10,666.67 to Santiago Aljure. These amounts are proportionate to Plaintiffs' estimated respective damages as a percentage of total estimated damages, and were separately negotiated and agreed to by each Plaintiff. Based on estimated damages calculations, Plaintiffs' best-case scenario damages amount to the following:

**SALMA BAHAA HUSSEIN**
| | |
|---|---|
| Unpaid Wages – | $2,992.00 |
| Retained Tips - | $2,400.00 |
| Liquidated Damages - | $5,392.00 |
| **TOTAL:** | **$10,784.00** |
| **Settlement Amount:** | **$4,000.00** |

**BRIAN NOONE**
| | |
|---|---|
| Unpaid Wages – | $22,912.50 |
| Retained Tips - | $23,500.00 |
| Liquidated Damages - | $46,412.50 |
| **TOTAL:** | **$92,825.00** |
| **Settlement Amount:** | **$10,666.67** |

**JORDAN MERRITT**

| | |
|---|---|
| Unpaid Wages – | $1,712.00 |
| Retained Tips - | $2,500.00 |
| Liquidated Damages - | $4,212.00 |
| **TOTAL:** | **$8,424.00** |
| **Settlement Amount:** | **$2,000.00** |

**JOEL ZAVALA**

| | |
|---|---|
| Unpaid Wages – | $38,887.00 |
| Retained Tips - | $33,000.00 |
| Liquidated Damages - | $71,887.00 |
| **TOTAL:** | **$143,774.00** |
| **Settlement Amount:** | **$19,333.33** |

**SANTIAGO ALJURE**

| | |
|---|---|
| Unpaid Wages – | $21,605.00 |
| Retained Tips - | $27,900.00 |
| Liquidated Damages - | $49,505.00 |
| **TOTAL:** | **$99,010.00** |
| **Settlement Amount:** | **$10,667.67** |

See, **Exhibit 2** for Plaintiffs' assumptions and calculation of damages. The settlement amount to Plaintiffs therefore provides a recovery of between 10.8% and 37% for Plaintiffs' best-case, owed wages, including liquidated damages. Courts have routinely approved settlements with similar or lower percentage recoveries, especially where, as here, there are significant risks associated with continued litigation. *See, e.g.*, *Axelrod v. Posigen CT LLC,* 3:22-cv-440 (JCH), 2022 U.S. Dist. LEXIS 238612 (D.Conn. Nov. 7, 2022) (approving settlement with 2.78% recovery, stating, "courts typically do not let the percentage of recovery impede approval, because the parties are generally better-positioned to judge the reasonableness of the settlement amount"); *Redzepagic v. Hammer*, No. 14-cv-9808, 2017 U.S. Dist. LEXIS 70424, 2017 WL 1951865, at *1 (S.D.N.Y. May 8, 2017) (approving settlement where plaintiff recovered $49,080.82 and plaintiff's best case recovery was estimated to be $323,000, *not* including liquidated damages); *Flores v. M Culinary Concepts, Inc*, 19-cv-1229 (ER), 2019 U.S. Dist. LEXIS 210771 (S.D.N.Y. Dec. 6, 2019) (approving settlement that provided for 6.98% of the estimated maximum recovery); *Penafiel v Rincon Ecuatoriano, Inc.*, 2015 U.S. Dist. LEXIS 160352 (S.D.N.Y. Nov. 30, 2015) (approving a $21,000 net recovery for plaintiff where best case damages were estimated to be $522,389.30, due, in part to significant concerns over the collectability of any judgment plaintiff could obtained post-trial.) Particularly in light of the litigation risks discussed below, this settlement recovery is a fair and reasonable result.

B. <u>Litigation Costs and Risks</u>

The second and third factors also favor approval as there are significant risks to Plaintiffs should the case not settle.

Defendants maintain that Plaintiffs worked significantly fewer hours than what is alleged in the complaint, and were at all times paid in accordance with the requirements under the NYLL and FLSA. Defendants maintain that should the case proceed to trial, they will vigorously challenge Plaintiffs' credibility. Furthermore, there is significant uncertainty over whether Plaintiffs have Article III standing with respect to their WTPA claims.

Finally, and perhaps most importantly, Defendants have made repeated representations regarding their difficult financial situation. In fact, Defendants' financial status was the primary impediment to the case reaching resolution at mediation. The case ultimately did settle based on the representations made by Defendants' counsel both at mediation and during subsequent negotiations, regarding the increasing costs, low margins, and declining revenues at the restaurant, as well as Mr. Canovic's lack of any significant assets. There is thus a high risk that Plaintiffs would be unable to collect on a judgment even if they were to prevail at trial. In fact, as part of negotiations, an extended payment plan was required due to the Defendants' precarious financial situation.

Accordingly, Plaintiffs believe it to be in their best interest to receive an expedient settlement payment rather than escalate the costs, burdens, and risks of trial. Plaintiffs believe that the settlement amount is a fair result, accounting for a significant percentage of the alleged damages owed, while eliminating the burdens and risks of trial.

C. <u>Arm's-Length Bargaining and Lack of Fraud or Collusion</u>

The fourth and fifth factors also weigh in favor of approval. Plaintiffs' counsel and Defendants' counsel have negotiated at arm's length over the course of this litigation. This matter was eventually settled with this assistance of a court appointed mediator. In addition, both parties' counsel have significant experience handling wage and hour claims. Moreover, the settlement is the product of arm's-length bargaining as the settlement amount represents a significant percentage of Plaintiff's potential recovery considering the risks discussed above.

Further, the red-flag issues identified in *Cheeks* are not present here. The Agreement does **<u>not</u>** contain an overly broad general release or a confidentiality provision. See **Exhibit 1**. The agreement does contain a mutual non-disparagement clause; however, it provides a carve-out for truthful statements concerning their experience litigating this Action and the facts underlying their claims. Moreover, as will be discussed below, Plaintiffs' counsel's requested attorneys' fees are not excessive as they seek one-third of the settlement, which is frequently approved in FLSA cases, and is an amount less than Plaintiffs' counsel lodestar.

Based on the foregoing, there is no evidence of fraud or collusion. Therefore, Plaintiffs respectfully request that the Court find that the Agreement is a "fair and reasonable" compromise of their FLSA claims against Defendants and approve the settlement.

## **THE REQUESTED ATTORNEYS' FEES ARE REASONABLE**

Plaintiffs further seek approval of attorneys' fees. The Agreement provides that Plaintiffs' counsel will recover $23,333.33 in attorneys' fees, which is one-third (1/3) of the $70,000.00 settlement amount. See **Exhibit 1**, Section 1.c.  Plaintiffs' counsel is not seeking reimbursement of the filing fee and the service of process fee, the only expenses incurred in this matter. The amount requested for attorneys' fees is fair and reasonable as it is the fee agreed upon by Plaintiffs in their retainer agreement (one-third), and a contingency fee of one-third is generally sufficient to account for the risks associated with representation.

Plaintiffs' counsel has worked without any compensation to date, and Plaintiffs' counsel's fees have been wholly contingent upon the result achieved. As of the date of this filing, Plaintiffs' counsel has spent approximately 79.1 hours investigating, researching, and litigating Plaintiffs' claims; and negotiating and executing the settlement, for a lodestar of $31,640.00. See **Exhibit 3** for Plaintiffs' counsel's contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done, and an itemization of costs. *See Wolinsky*, 900 F. Supp. at 336.

Plaintiffs' counsel's request for attorneys' fees in the amount of one-third of the settlement amount is fair and reasonable. "[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases." *Meza v. 317 Amsterdam Corp*., No. 14 Civ. 9007, 2015 U.S. Dist. LEXIS 166890, at *5 (S.D.N.Y. Dec. 14, 2015); *see also Ramirez v. Greenside Corp*., No. 16 Civ. 726, 2017 U.S. Dist. LEXIS 30527, at *9 (S.D.N.Y. Mar. 3, 2017) (stating "contingency fees of one-third in FLSA cases are routinely approved in this Circuit"); *Leon v. Univ. 45 Fruit & Vegetable Corp*., No. 19 Civ. 8266, 2020 U.S. Dist. LEXIS 48716, at *5 (S.D.N.Y. Mar. 20, 2020) (finding the amount of the fee award reasonable where "the attorneys' fees amount is approximately 33% of the [ ] settlement amount after costs").

\*              \*              \*

For the foregoing reasons, Plaintiffs respectfully request that the Court approve the attached settlement agreement. We thank the Court for its time and consideration.

Respectfully submitted,

*/s/ William Brown*

William Brown, Esq.
wbrown@bkllawyers.com

cc:    all parties via ECF

5